First case on our call this morning is Agenda Number 4, Consolidated Cases numbered 108-605 and 108-612. Founders Insurance Company et al., Appalant v. Albert L. Munoz et al., etc. Counsel may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Sherry Schell-Medine and I represent Founders Insurance Company in this matter. Together with Keeley Hillison, who represents Safeway Insurance Company, we represent the Appalants in this case. Founders is also a cross-appellee. I will reserve comment on the issue raised by the cross-appeal to my rebuttal. Ms. Hillison and I will be splitting the 20 minutes, 10 minutes apiece. Your Honors, we are before you this morning due to the conflict created between the First District and the Second District by the First District's decision in Founders v. Munoz, Consolidated, with respect to the application and interpretation of the policy and Safeway's policy. In Century National v. Tracy, which came out of the Second District in 2003, the Court clearly stated that the reasonable belief exclusion clearly and unambiguously encompassed unlicensed drivers. And without a valid driver's license, one simply could not formulate the reasonable belief that he or she was entitled to drive a vehicle in the area. This exclusion is unambiguous, Your Honors, and does not violate public policy. I will deal with the ambiguity issue. Ms. Hillison will deal with the public policy issue. Your Honors, from the time that Tracy came down in 2003 until the First District ruled in Munoz some six years later, the term entitled had an established legal meaning. Merely because the decision in Tracy is relatively young does not give it any less weight. Between 2003 and 2009, no appellate court had ever challenged Tracy's interpretation or application of the reasonable belief exclusion. This Court in Rich v. Principal Life held that a contract term may be unambiguous because it has acquired and established legal meaning. And it is our position that the reasonable belief exclusion has had established, had an established legal meaning for the years preceding Munoz. Is the, is the clause reasonable, the reasonable, I'm blanking out on that. Okay. I can recite it to you, Your Honor. Our policy does not apply under Part 1, the reasonable belief exclusion clause. It does not apply. I have, does it apply to anything other than a non-licensed driver? To date we have only used this exclusion for unlicensed drivers. By the clear, by the, the language itself certainly could be read beyond that couldn't it? It could. But I, I have not had occasion to consider this exclusion in the context of any other factual reason. Well, a DUI often times results in the suspension of a driver's license. A suspension. I'm talking about coverage on the DUI itself. Oh, I see. We, we do not exclude coverage or seek to preclude coverage based upon intoxication. That is not the intent or purpose of this clause. Supposing a driver is not aware of the fact that his license has been suspended. Parking tickets, a number of parking tickets that have piled up can result in suspension without any notice, actual notice received by the driver of the car. The Secretary of State has in place certain practices and procedures that they utilize to notify the individual whose license is about to be suspended of the date that the suspension will take place. And this notice is sent to the last known address of the driver, which is supposed to be kept. The driver or the owner of the parking ticket? I, I believe it's the owner of the vehicle. So a driver, so the driver's license would not have been suspended. It's the owner whose license is suspended. Right. The owner would have been given notice. I understand what Your Honor is saying. In those cases, if there is a reasonable explanation offered by the driver as to why he or she does not know that his or her driver's license is suspended, that is certainly a fact which would weigh into the analysis. The, the exclusion is, deals with a reasonable belief that you are entitled to drive. If this person genuinely does not know that their driver's license is suspended, we probably would not use this, this exclusion against that person. With all due respect to Founders, are we left to the good graces of Founders? Their interpretation of the Act would be reasonable? Isn't that what you're suggesting? It's not, it's not simply Founders, Your Honor, that, that reads this exclusion this way. It's all the other insurance companies. Well, Century National, obviously, Safeway, this exclusion appears in most, if not all, automobile policies across the country. The difference is that in the Founders policy, it is the driver's license that is suspended. It is an exclusion which is only reached if the driver is an insured. And let me be more clear. In our insuring agreement, we cover the named insured and a permissive driver. If the driver is non-permissive, you never reach the exclusion, because they do not fall within our insuring agreement. In, in most of the other states, they have an ISO, I'm, I'm to understand, it's a, it's a form type of policy, where the insuring agreement simply states that a person insured is you or anyone driving your auto. Does that, does that also mean someone who doesn't have a driver's license? Under the, the latter exclusion? If the insured gives permission to someone to drive who doesn't have a license, would that person be covered? That person is an insured under the Founders policy. Even if they don't have a valid driver's license? Yes. And it is the license which becomes an issue in our policy when you reach the exclusion. Once you've established that the person driving is permissive, and therefore an insured, then you look to the exclusions to see if any exclusions apply, which might take that person out of coverage. So it's a two-step process. Right. It's a two-step process. Let me get back to my question about the owner of the car. It's my understanding that a license is automatically suspended. No notice is given when there are three tickets. So the owner could have his license suspended, and that would be treated in the way that you have described. If those are circumstances that are explained and established, then he would not be excluded. Right. Again, it would go to what the person reasonably knew to be the case. If he just knew that he had three parking tickets, is that sufficient? It should be. So he should then presume that his license has automatically been suspended. People are charged with knowing the law. So he should know that three tickets means an automatic suspension. And then he would not be entitled to drive. Driving is a privilege. But as I understand your argument, counsel, then the plain reading of the statute would indicate that if there is reasonable belief to know, then they'd be excluded. So you're saying it's not ambiguous, right?  All right. And an answer to these questions is that you're feeling then the insurance company takes a position, and those would be facts that would be put in evidence in some type of deck action as to whether or not the insurance company's determination that an exclusion applies. I mean, they can certainly put in evidence that they had no reasonable belief under all these certain hypotheticals, right? And then a determination would be made then. Absolutely. We're in a search for the truth, what really was in that person's mind, and was it reasonable at the time that he was driving. I see that counsel is ready to separate. Are there any more questions of counsel? If you have not completed your answer, you may continue now. I believe that I completed Your Honor's answer. Yeah, that's fine. I'll turn it over to Ms. Hillison. Thank you, Your Honors. May it please the Court and counsel, my name is Keely Hillison, and I represent Safeway Insurance Company. The facts of the Safeway case are a little bit different from the Founder's case. In our case, we issued an insurance policy to Mr. Ramirez. However, it was Mr. Fernandez who was driving the vehicle at the time of the accident. Mr. Fernandez was not listed on the application for the Safeway policy, and Mr. Fernandez never had an Illinois driver's license. And I believe in all of these consolidated cases, however, all states paid for the damages and injuries that were sustained by the other vehicles and people involved in the accident, either under their uninsured motorist coverage or medical payments, et cetera. And no court in Illinois has found this exclusion, the reasonable belief exclusion, to be against public policy. A ruling by this court that the exclusion violates public policy, I believe, would itself violate Illinois' public policy of keeping unlicensed drivers off the road. On the one hand, the legislature has enacted a statute that prohibits unlicensed drivers from driving on Illinois highways. On the other hand, the legislature has also enacted a statute that requires insurance coverage for permissive drivers. This court has to construe both of those statutes as the legislature presumably, reasonably must have contemplated in order to avoid absurd, unjust, and unintended coverages. I believe that's what Justice Burke said in her October opinion in Zurich v. Key Carthage. Now, I believe the legislature must have contemplated, must have presumed that all of these permissive drivers would in fact be licensed drivers as required by law. The legislature did not intend to take unlicensed drivers off of the road under one statute and then simply put them right back on the road under the other statute for permissive coverage. The legislature did not say you can't drive without a license in Illinois, but it's okay to drive without a license as long as you have insurance. Under Illinois law, as stated by Justice Carmeier in the Progressive Universal v. Liberty Mutual case, insurance exclusions are allowed in Illinois unless they are prohibited by law. This exclusion has not been prohibited by law. There is no statute requiring coverage for unlicensed drivers, and there is no statute prohibiting exclusions for unlicensed drivers. In fact, Illinois case law has recognized and upheld exclusions which in effect have excluded coverage for unlicensed drivers. There's case law upholding named driver exclusions where a member of the family or a member of the household is unlicensed, but the other members of the household want insurance coverage. And those exclusions are upheld even if the excluded named driver has permission to use the vehicle. The Illinois Insurance Code even allows insurance companies to cancel policies if any member of a named insurance household has his driver's license suspended or revoked. I think it's significant that in the seven years, six or seven years, since the second district decided the case of Century National Insurance v. Tracy, the legislature has not enacted any statute or amended any statute or the insurance code to change the law stated in Tracy. It has not acted to prohibit the reasonable belief exclusion or the way it was applied in Tracy, and has not enacted any statute barring or prohibiting exclusions for unlicensed drivers. Had the legislature intended or wanted to prohibit such exclusions, it could have done so. This court should not change the law where the legislature has chosen not to do so. If an exclusion results in any gap in coverage between liability coverage and uninsured motorist coverage, as Justice Carmeier stated in Progressive Universal v. Liberty Mutual, that is a matter for the legislature to address. That is not a matter for this court to address. It's not for this court to change the law to prevent any possible gap in coverage. And I would just briefly like to address a couple of the questions that you posed to Ms. Sheldon-Medine. Justice Freeman, for the driver who is not aware that his license has been suspended, I believe that driver will be covered, because that driver then would have a reasonable belief that he was entitled to drive simply because he was not aware that his license was suspended. And reasonableness, I think in every instance, is a question of fact to be determined under the circumstances. And it's not going to be Founders or Safeway or any other insurance company deciding that. It would be the court in that particular case to decide whether that driver had a reasonable belief that he was entitled to drive. And as far as the DUI, that's not the issue here. That's not an issue at all here. None of these insurers have excluded coverage for drunken driving, and I think if any insurer were to do that, to attempt that under this statute, the court would probably prevent that from happening. But again, it would be a question of fact for the court in that instance. I would urge this Court to reverse the decision of the First District Appellate Court, affirm the judgment of the trial court, and adopt a multi-factor approach in applying these reasonable belief exclusions, such as the five-factor test adopted by the Maryland Court in General Accident v. Perry. And I think that the Second District did, in fact, consider those same factors in its decisions in Tracy and Economy Fire v. State Farm, although it didn't come out and say it was applying multi-factor tests. And I think you can see by the considerations that it did, in fact, follow that. And I would urge this Court to do the same. The Tracy opinion is well-reasoned, and there's no public policy reasons to prohibit this exclusion. Thank you. Good morning, Your Honors. Peter Morse for the appellees. We are here before you asking you to affirm the correct ruling by the Illinois Appellate Court. The Court was correct when it ruled that the no reasonable belief entitled to use exclusion contained in the founders and the Safeway policies do not apply to a liability insurance coverage situation involving a clear permissive user of the vehicle, either the owner himself or someone who had permission. If founders and Safeway wanted to have that exclusion in their policy, at a minimum they had to at least put the word legally entitled to drive in their exclusion. They don't say that. They just say reasonable belief entitled to use. That language does not unambiguously preclude coverage to someone whose license may not have been in effect at the time of the accident. What they really should have done is what Safeway used to do and have an actual unlicensed driver exclusion in the policy. If they had that, it would be crystal clear. There would be no question about it. We wouldn't be here telling you that the exclusion is ambiguous. Instead, this exclusion, a reasonable interpretation of this exclusion is simply another way of stating you have to have permission. You have to either be the owner of the vehicle or have permission in order to have a reasonable belief that you are entitled to use that vehicle. As this court knows, if there is a reasonable interpretation of an insurance policy provision which grants coverage, that is the interpretation that the courts are to imply. Here, there is a reasonable interpretation. It provides coverage. That's what the appellate court ruled and that's what we asked this court to rule. We now know at the late stages of the briefing in this case when Safeway argued that their exclusion was allowed by the Department of Insurance, we now know why they don't have an unlicensed driver, a clear, unambiguous exclusion in their policy. The Department of Insurance, as you've seen from the attachments to our brief, has issued a publication expressly forbidding any such exclusion. If they had that exclusion in their policy, it wouldn't be enforced. So instead, they're sort of trying to vaguely, ambiguously get around what they're trying to say because it wouldn't be enforced and have courts say, oh, that must mean you have to have a valid license at the time of the accident. In an attempt to get around the fact that their exclusion is not clear, it is ambiguous, they argue, well, there's an established legal meaning to the words entitled to use and they can only cite these two Illinois cases, Century v. Tracy and Economy v. State Farm. Century v. Tracy is not in conflict with this case. That's an uninsured motorist case. It has nothing to do with mandatory liability insurance. It has nothing to do with any injured victims. Maybe the exclusion is clear enough to preclude coverage to the insured himself who's attempting to gain benefits for his own injuries under his policy. That's not what we're dealing with here. All of these cases are liability insurance coverage cases. Economy v. State Farm, the other case before this case that enforced the exclusion, that was just simply a clear no permission situation. In that case, the driver had lost his license because he was convicted of a DUI. He then got access to his girlfriend's car by hitting her, knocking her to the ground, taking the key out of her pocket, and then driving drunk. In that situation, he didn't have permission to drive the car, obviously. So they just supplied the exclusion in the way it unambiguously does apply to non-permission situations. So there is no prior conflicting law to the Munoz decision. The Munoz case was the first and only case in Illinois dealing with liability insurance coverage for a clear permissive user, and the court ruled a reasonable interpretation of that exclusion is permission. If they have permission, the exclusion doesn't apply. That's the only time it applies. It doesn't apply to unlicensed drivers. If this court agrees with the appellate court and finds... Why would, if there was a permissive user, why couldn't you just then analyze whether that permissive user was licensed? How does that create an ambiguity and differentiate from the tracing? Because it doesn't say anything about licensed or unlicensed in the exclusion. It doesn't even talk about legal liability to drive a car. It just talks about reasonable belief that you are entitled to use a car. They can't then add extra words, try to expand that exclusion to something the exclusion doesn't actually address. Wasn't that Munoz factually different? Did it involve a wife of a driver who herself had no license, and she was excluded specifically in the policy? Munoz is one case that's different than the other ones, really. In that case, there was a named driver exclusion, which the legislature has said is enforceable. It's directly in the statute. But as you see in our cross-appeal on that issue, the named driver exclusion, the legislature has incorporated a specific limitation on the ability to exclude named drivers by stating that the required insurance card shall contain a warning. And they didn't do that in the Munoz case. They admitted their insurance cards don't warn of an excluded driver. So the Munoz excluded driver situation should be reversed. Back to my question, Counsel. I can tell somebody you can use my vehicle. They can know that they don't have a license, right? And they should not have a reasonable belief that they are entitled to use my vehicle, even though I gave them permission, right? No, they have a reasonable belief that they are entitled to use your car because you gave them permission. They may not have a reasonable belief that they're legally entitled to drive the car, but that exclusion doesn't say legally entitled. Well, they should have a reasonable belief, shouldn't they, that they're not entitled to drive any car, including their own? They don't have a legal right to do so. That's correct, but the key word is legal right. They have permission, entitlement right. The owner needs to do their car or someone gave them the right to use their property. But you're right, they don't have a legal right under the Secretary of State rules about valid licenses, but that's not what their exclusion says. It doesn't say anything about legal rights. It doesn't say, like a clear exclusion would, unlicensed drivers are not covered. No, it goes further than legal right. It could be. But it certainly would include legal right, wouldn't it, a reasonable belief? I think exclusions are to be narrowly construed, Your Honor, and if they don't put the word legally entitled, they can't just say, oh, it includes every conceivable situation where someone might be able to figure out that they're not entitled to drive a car. Tell me again what's ambiguous about that in my example. You can use my vehicle. I don't know that the person, or maybe I do, but I don't know that the person doesn't have a license or his license is revoked or whatever the situation is. How applying that without a reasonable belief that the person is entitled to do so, where is the ambiguity in that? Because the exclusion doesn't talk about legal entitlement to drive a car. It doesn't talk about a valid license. He has zero entitlement to drive the car. I contend he actually has complete entitlement to the extent entitlement means the owner of that property allowed you to use his property. The exclusion doesn't refer to legal entitlement, valid license. Those words are not contained in the exclusion. Yeah, I'm not questioning that those words aren't there. I'm just trying to see what your argument is as to where the ambiguity lies. That's exactly where it lies. If they put the word legally entitled, I wouldn't have a very good ambiguity argument. If they put the exclusion saying unlicensed driver exclusion, I'd have no ambiguity argument. And all we'd be dealing with is the second part of our argument, which is if you find that that exclusion is clear and unambiguous, does public policy allow such an exclusion to exist? We know the Department of Insurance wouldn't allow it. Counsel, the driving is a privilege. It's well known, the general public knows, that you cannot drive any vehicle without a license. That's absolutely correct, and there are all kinds of criminal sanctions against someone who does drive a vehicle. Why would you have to put the words in legally entitled if you can't drive at all if you don't have a license? It's a common knowledge. It's generally known in the definition. Because, in fact, the exclusion just says you have a reasonable belief you're entitled to use a vehicle, and that reasonably means you have permission from the owner to drive it. It doesn't say anything about the clear state laws, which have prohibitions against people driving without valid licenses. But wouldn't the state law supersede the owner of the car? I mean, you could own a lot of cars, and no one can drive those cars, even the owner, without a license. So even the permission the owner would give to someone would be void. Well, we're not talking about whether the person has violated the rules of the road. No, but I'm talking about general definitions. Entitlement is a broad word. We've cited dictionary definitions in our briefs. It certainly can just mean that the owner lets you use it. That means you're entitled from the owner. It doesn't say who the entitlement has to come from. If they said entitled by the state of Illinois, if they said legally entitled, any of those extra words would have got around this ambiguity problem. Well, just because a clause is broad doesn't mean it's ambiguous. Just because it's only been used in the license setting doesn't mean it couldn't be used in another setting. Let me give you another hypothetical. Can Joe drive your car? The owner doesn't know Joe. Yeah, sure, Joe can take it. You know, if he's just going to the store, let him take the car.  Now, Joe should have a reasonable belief that he is not entitled to drive a car, right? He doesn't have a license. And now in this case, you're going to put, well, let me just go back to my initial statement. Just because it's broad doesn't mean it's ambiguous. I think that there could be, and maybe I came up with one, other settings outside of the license standard. And you would say, again, well, he can't legally drive a car either. Why didn't they put legally in there? Exactly, Your Honor, that's my position. They didn't put it in there. They wish they did, but we know why they didn't. Because if they did, it wouldn't be in the policies at all because the Department of Insurance wouldn't allow it. Well, what other than a legal reason would there be, then, that would create an ambiguity as to where somebody would have a reasonable belief they couldn't drive the car, but there was not a legal reason why they couldn't drive the car? Permission. They didn't have permission from the owner to drive the car, like the girlfriend. Well, wait, let's break this down. They can't get in the car and drive it and be insured unless they're a permissive user in the first place, right? Yes. So the argument that, well, this could also mean permission, well, wait a minute, they're not on the hook for anybody to get in that car unless they're either the insured or a permissive user anyway, are they? They are not. So, again, doesn't that somewhat defeat the ambiguity argument that this somehow could go to a permissive user? They have to be a permissive user before you even get to the exclusion. It's very common in insurance policies to augment your policy defenses with exclusions, and it happens all the time. You just emphasize the fact there's no coverage for non-permissive users by putting it in an exclusion. There's exclusions that expressly talk about no coverage for non-permissive drivers. That doesn't mean that that exclusion now covers people who don't have licenses but otherwise have permission. Why wouldn't this interpretation be adverse to public policy? In other words, if I know I can't drive a car because I don't have a license, if I can flimflam Thomas and let me drive his car, doesn't that end around what the state says about if you don't have a license, you don't drive a car, and the Secretary of State says whether you can drive the car? There's clear rules of the road for that, just like in Hertz v. Garrett where the intoxication limitation was excluded. That doesn't mean they're condoning and overruling all the DUI laws. There's lots of laws that exist to prevent people from driving drunk or from driving without a license. It's not, like the court said in Hertz v. Garrett, it's not up for the insurance company or rental car companies to try to police the rules of the road. But how can the insurance company make some kind of a deal with an insurer that would authorize somebody that isn't licensed to drive to drive? There's lots of cases where unlicensed people are found to have coverage. We cited a bunch of them in our brief. There's 14-year-olds who had coverage, and the appellate courts affirmed that coverage, that ruling for coverage, because they were found to be a permissive user. It's never been a problem for the courts in the state to have, and it's really because of the strength and the breadth of our mandatory insurance law. We want liability insurance to be there for injured victims, and if someone's driving a car drunk or unlicensed or crossing the center line, or driving recklessly or whatever else you do wrong, we have the rules of the road, misdemeanor courtrooms, for those violators of those valid state public policies. But it's not something that's to be done in an insurance policy to deprive coverage for injured victims. But doesn't the uninsured motorist coverage requirement take care of that concern? You know, it really doesn't, Your Honor. I mean, you shouldn't be requiring the victim to now have to go to their own insurance policy, if they have one, and make a claim under their own insurance policy and potentially suffer the increased premiums that might exist because of ambiguous But the law requires uninsured motorist coverage. Right. So we are requiring victims to go to their own policies, aren't we? If they're actually struck by someone who doesn't have insurance versus someone who has a policy with an ambiguous and public policy violating exclusion. Not to mention, as you saw from the amicus brief that was filed, there's lots of insurers in this state, not insurers, lots of drivers in this state, who don't own a car. There's no requirement that you own a car and thereby insure it. There's plenty of people who live in urban areas who use public transportation. They're not going to have uninsured motorist coverage to go to. They're going to be completely unable to recover for their injuries in those situations. They cannot obtain insurance? I suppose you could probably buy a non-owners policy, that's true, but you don't see too many of those, Your Honor. Just in conclusion, we ask that you affirm the ruling of the appellate court, that you remand this case back to the trial courts with instructions to enter summary judgment in favor of the appellees and against Founders and Safeway. There's already been uncontroverted evidence that all these drivers were permissive users of those cars. And as to the Munoz case, we ask that you overrule that portion of the appellate court, which found that Founders doesn't have to comply with the statute which expressly states that the named driver exclusion shall have an insurance card which contains a warning. Thank you, Your Honor. Good morning again, Your Honors. I would just like to first address the cross-appeal issue with the insurance card. Munoz involved a situation where the named insured obtained a policy. Her unlicensed husband was identified as a household member on the policy, but he had never had a license. Ms. Munoz, or Ms. Flores, excuse me, she did the right thing. She excluded her husband from coverage under the policy. And she signed the application. Her declarations page listed her husband as an excluded driver. And for all intents and purposes, this was their intent. This is also clear from the fact that approximately 13 days after the loss that her husband was involved in, he obtained his driver's license, and she requested that the excluded driver endorsement be lifted and that he be included as an additional driver on the policy, and that is exactly what happened. At no point in the litigation did either Mr. Munoz or his wife come to court and say, no, Mr. Munoz wasn't an excluded driver. The facts in the case were that he was. Nobody came to court to contest that. There were no factual contests put forth by Allstate or any other party challenging the status of Mr. Munoz on the date of the accident. He was unlicensed, had never had a license, and was excluded on the policy. While the insurance card statute, as we call it, requires an indication of excluded drivers, the First District was correct insofar as holding that the failure of the insurance company to dot all the I's and cross all the T's does not enlarge coverage. It doesn't penalize the insurance company when that was the clear intention of the contracting parties. And for that reason, Founders asks that you affirm the ruling of the First District as to the excluded driver endorsement. If we agree with you on the main issue discussed here, does that moot out your cross release? The First District did not include Munoz in its analysis of the reasonable belief exclusion, because they affirmed it on those grounds only. So there would have to be a determination in this court? The fact remains, if you agree with Founders and Safeway on the reasonable belief exclusion, Mr. Munoz was unlicensed on the date of the accident, then we would be successful on that case as well under the reasonable belief exclusion. I pled excluded driver in the alternative in the pleadings. With respect to the use of the word legally, the same argument was made in Tracy, and the court rejected it, saying that it was of no consequence, the absence of the word legally. And reading through the states that counsel cited as apparent authority for his opinion or his position, I found that these states do not support all states' position at all. These states, they did not find that the exclusion was ambiguous, because they were the ISO type of policies. They looked at permission in the context of that exclusion simply because permission wasn't part of the insuring agreement. This would be the first opportunity that the court would have had to consider the issue of permission when you jump over to the exclusions column. So the analysis is different because the policies are different. But there were plenty of out-of-state cases where the court was not asked to decide whether an absence of a license was enough, and so they didn't reach that issue. Counsel simply does not have the support in the country that he would have this court believe. It also cannot be the law of the state that permission alone is enough. If you are otherwise not entitled to drive a car, getting permission from somebody to do so does not change or alter this fact in any way. Founders and Safeway, as insurers, have a right to limit the risks they are willing to undertake. Founders seeks to limit its risks to duly licensed insurers, which means the named insured or permissive drivers. Counsel misspeaks when he says that in all of the founders' cases they were permissive drivers. This is not true. In three of our five cases, the driver was the named insured. Permission was not an issue. How the First District respectfully could have said that this exclusion is ambiguous and that it applies only if you didn't have a reasonable belief that you were permitted to drive, it makes no logical sense when you're talking about the named insured who does not require a grant of permission. The named insured didn't have a license, had no entitlement to drive. In conclusion, we ask respectfully that Your Honors reverse the ruling of the First District Appellate Court, adopt the reasoning and conclusions of Tracy, and for any other relief that you deem appropriate. Thank you very much. Good morning again. Counsel, let me ask you this question over here. Your opponent, opposing counsel, indicated about the old policy, the Safeway that had, he said you could have had legally entitled or legally permitted, whatever the phrase would be. Do you remember that point he made? Yes, I do. Okay, and then he commented that we now know why because he, and I may not have understood this. Can you explain your position on that? I believe that's what he said, but you don't understand it because there's nothing in the record to that effect. This is something that he raised for the first time on appeal. And whatever he's put in his brief from the Department of Insurance, I don't recall there being anything in it to that effect. But if there is, it certainly wasn't in the trial court. He's raising it for the first time in this court, and I think the argument's waived. Well, let me ask this. To your knowledge, as a matter of law in Illinois, is there a provision by the Department of Insurance that somehow impacts that point? No. To my knowledge, there is no such provision or regulation by the Department of Insurance. I'm not aware of any statute or regulation or mandate from the Department of Insurance which prohibits exclusion of unlicensed drivers or prohibits the reasonable belief exclusion, as phrased in this case in the Founder's policy, the Safeway policy, and in the policy in Tracy. That is still good law, except for the conflict, in this case, with the First District opinion in Founders v. Munoz. If the purpose of that exclusion is to prohibit unlicensed drivers, if that's really the intent, would you be prohibited from amending the policy to put in that language to say those who are legally entitled? I don't think we would be prohibited from doing that. However, Safeway added this reasonable belief exclusion to its policy in direct response to the Tracy opinion. We knew from the Tracy opinion that the courts were going to construe this as excluding coverage for unlicensed drivers. We were safe in relying on that law, and that's exactly why it was put into the Safeway policy. So for counsel to raise this other issue on appeal, I think this court doesn't have a chance to hash out the facts. We don't have a chance to hash out the facts. I think they've waived it, and it should not be part of this court's decision. The same with the argument about the Department of Insurance. That's something that they're raising on appeal for the first time. It's waived. I want to clarify one point. In the instance that you discussed, Justice Garman, where you flimflammed Justice Thomas into letting you drive his car even though you're not licensed, although the reasonable belief exclusion would exclude coverage for the unlicensed driver, Justice Garman, Justice Thomas, you'd still be covered. She takes your car. She's not licensed. What a relief. I didn't make any admission that you have a license. So the owner who unwittingly lends his car to an unlicensed driver, he's protected. This policy will still protect him. And another point I'd like to make, contrary to what Mr. Moore said, neither Safeway nor I believe Founders is trying to police the roads or use of cars on the road, but we are trying to limit our risks. It's reasonable to let the insurance company limit its risks to qualified drivers. If the Secretary of State thinks someone is not qualified to drive, why should Safeway or Founders or any other insurance company have to cover the risk of that driver getting on the road and causing an accident? In conclusion, I would just ask that the Court affirm the decision of the trial court, reverse the decision of the appellate court, and again, I think the decision of the Second District Court in Tracy is well-reasoned, and I would hope that this Court would adopt a similar stance. Thank you.